## CHARLES K. REESE v. MARY HICKS.

Under the Spanish Law, in force in the Republic in 1839, the parents inherited the estate of a child dying without descendants, in equal portions, or share and share alike, without distinction or discrimination as to the source from which the property may have been derived.

Where the father and mother were the only heirs of their deceased son, and they joined in a proceeding to have the account of his administrator revised and corrected, and judgment was rendered in their favor and against the administrator for $314 67, and execution issued, and the defendant sued out an injunction, alleging in his petition that at the time of the rendition of the judgment one of the plaintiffs, the father, was dead, it was held that the first judgment, so far as it established the amount due from the administrator to the estate, was not vitiated by the fact that one of the plaintiffs was dead at the time of its rendition ; that the mother was entitled to a decree for her distributive share of the estate of her

son ; but as none of the facts upon which depended her rights to a share of her husband's estate were in evidence, the Court below erred in giving judgment in her favor for the whole of her son's estate.

In a proceeding for the revision and correction of the account of an administrator, " The parties plaintiff would be entitled to a further order or judgment for the " partition and distribution of the balance remaining in his hands. This distri- " bution and payment should be ordered, on the principles and rules by which " the County Courts are controlled in decreeing payment and distribution by an " administrator of the balance which on settlement is adjudged to be due, viz : " to distribute to the heirs, devisees and legatees who may be present or repre- " sented in Court, their respective distributive shares ; and to order the remain- " der due to parties not present or represented in Court, to be paid over to the " Treasurer of the State."

Error from Bastrop. The plaintiff in error had been the administrator of one Milton Hicks, deceased, who departed this life in 1839, and having finally settled with said estate, was declared to be discharged, on his producing a receipt of the delivery of the property of the estate to the heirs of the deceased. In 1849, William Hicks and Mary Hicks, the parents of the deceased, filed their petition complaining of negligence and waste by the plaintiff, as administrator, and surcharging and falsifying his account, and praying that the same might be revised and corrected. Such proceedings were had as terminated in a judgment, on the 21st day of May, 1852, in favor of the petitioners and against the said administrator, for three hundred and fourteen dollars and sixty-seven cents. This judgment was, upon writ of error, subsequently affirmed in the Supreme Court with damages ; and execution having issued, the said administrator filed his petition in the District Court, alleging that at the time and before the rendition of said judgments, the said William Hicks had departed this life ; that, consequently, the said judgments are absolute nullities ; that the said William Hicks has no administrator in this State ; and he prayed for process against the said Mary Hicks, the surviving plaintiff in said suit, and against the unknown heirs of said William Hicks, deceased, and George W. Scott, the Sheriff, with whom had been lodged the execution. He further prayed that the said judgments be set aside, and

all further proceedings on the same be perpetually enjoined, and that the said cause be reinstated on the docket. Publication having been made in conformity with law, the defendants appeared and pleaded various matters which need not be noticed. The cause having been submitted to the Court, it was decreed that William Hicks having departed this life before judgment, the said judgment was as to him a nullity, and that the execution in the name of William and Mary Hicks, his wife, be perpetually enjoined. It was further decreed that the judgment was void only as to William, but was valid as to Mary Hicks; and it was adjudged that she should recover the said sum of three hundred and fourteen 67-100 dollars, the amount of the judgment of the District Court, and also the costs and damages adjudged by the Supreme Court, together with the legal interest thereon, and that the plaintiff should recover of Mary Hicks his costs, &c.

*T. H. Duval* and *J. A. & R. Green*, for plaintiff in error.

*W. S. Oldham* and *Claiborne*, for defendant in error.

HEMPHILL, CH. J. This judgment has been brought up by writ of error, and for reversal it is assigned,

1st. That the Court erred, in the state of the pleadings, in perpetuating the injunction against the execution as to Mary Hicks.

2nd. In ordering an execution to issue in favor of Mary Hicks, it not appearing that she was sole heir, or any heir of William Hicks, or that there was any petition for such execution.

In order to determine whether there was error in decreeing the whole amount of the judgment to Mary Hicks, it will be necessary to consider the extent of her interest in the estate, for upon that must depend her right in the premises. The intestate departed this life in 1839, and under the Spanish Law

then existing the parents (the deceased having left no issue) inherited his estate in equal portions, or share and share alike. (L. 4. Tit. 13 Patidas 6; L. 6 and 7 of Toro, or 1 and 2 Tit. 20 Lib. 10 Nov. Recop; Escriche, *Diccionario, Verbo Heredero.*)

The law cited from the Partidas, and which is not translated by Moreau and Carleton, declares that where the intestate has no issue, but leaves brothers and sisters as well as parents, they shall all inherit equally, *per capita;* but this with regard to brothers and sisters was abrogated by the laws · of Toro above cited.

An ancient law of the Fuero Real L. 10 Tit. 6, Lib. 3, also provided that the estate of a child who died without descendants should return to the trunk or root from which it issued; that is, property acquired from or through the father should go to the paternal line, and from the mother, to the maternal line. But this was also abrogated in effect by the sixth Law of Toro, and though it still exists in some localities in Spain, yet the general law is that the parents succeed to the estate of their descendants without distinction or discrimination as to the source from which the property may have been derived. Whether, in the equal division, between father and mother, of the estate of a deceased child, the father would be entitled to retain, during his life, the right of usufruct, which, under the laws of Spain, he has in certain descriptions of property of a minor child, it is not necessary here to discuss, as no such question can arise in the case. *Vide* Escriche, *Verbo Heredero.*

It appears, then, that William Hicks and Mary Hicks, the father and mother, were the only heirs of the deceased, and they were entitled, separately and individually, to equal shares of his estate. The rights of one did not depend on the other. They were totally separate and distinct.

The rights of Mary Hicks, then, as they vested at the death of her son, extending only to half, did not entitle her to judgment for the whole of the estate.

Did she become entitled, by the death of her husband, to

his portion of the succession? This would depend on a variety of circumstances, which are not in proof, and which, consequently, could not form a basis for the action of the Court. He might have made a will, and bequeathed his property to strangers; or, if dying intestate, he may have left descendants, in which event his surviving wife would be entitled to only one-third of his personal estate; and there are other contingencies which would have given her a greater or less share in the estate of the deceased. But none of the facts on which depended her rights to a share of her husband's estate, were in evidence, and consequently she could not claim a judgment for any portion as belonging to the succession of her husband.

But though not entitled to a decree for the whole, yet there is no error in the judgment so far as it adjudges merely that the administrator, on a settlement of the estate, is indebted in the sum specified in the judgment. A decree, establishing the balance due by an administrator, is one thing, and a judgment that this should be distributed among the heirs or creditors, is another. It is not necessary that all the creditors or heirs should join in a proceeding such as this to have the account of an administrator revised and corrected. This may be prosecuted by any one interested in the estate, (Hart. Dig. Art. 807, 809, 1230,) and consequently the death of any who may have joined as plaintiffs will not abate the proceeding, but the suit may be carried to judgment at the instance of the survivors. Mary Hicks might have instituted and prosecuted the suit alone; consequently the death of her husband, the co-plaintiff, will not abate the proceeding, or deprive her of the right to have judgment, establishing the amount due to the estate by the administrator. This has been done, and the only question is as to the disposition to be made of the amount.

The provisions of the statutes which authorize this proceeding, give no specific directions except as to the revision and correction of the settlement by the administrator. But this would not be the ultimate object of such proceeding. The parties plaintiffs would be entitled to a further order or judg-

Reese v. Hicks.

ment for the partition and distribution of the balance remaining in his hands. This distribution and payment should be ordered, on the principles and rules by which the County Courts are controlled in decreeing payment and distribution by an administrator of the balance which on settlement is adjudged to be due, viz: to distribute to the heirs, devisees and legatees who may be present or represented in Court, their respective distributive shares, and to order the remainder due to parties not present or represented in Court, to be paid over to the Treasurer of the State. (Hart. Dig. Art. 1198, 1199.)

In accordance with these rules, judgments on such proceedings should not be to pay, indiscriminately, to the plaintiffs, the amount ascertained to be owing by the administrator, but to pay to each the amount due to him or her, respectively; consequently, the judgment should not decree to Mary Hicks the whole of the estate, but only her respective distributive share.

There was no evidence that she was entitled to more than one-half. She may be entitled to a portion, or the whole of the remainder; but this requires proof, and if it be not established, or if no one proves that he is entitled to the distributive share of William Hicks, deceased, in his son's estate, then judgment should be in favor of Mary Hicks for the one-half, and that the remainder be paid into the Treasury of the State.

Judgment as to perpetrating the injunction against the execution in the name of William and Mary Hicks and reversed as to judgment in favor of Mary Hicks and cause remanded.

Reversed and remanded.